UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA SINGH,                                              )
                                                         )
    *Plaintiff,*                                       )
                                                         )
v.                                                       )   Case No. 1:18-cv-1247-RCL
                                                         )
AMERICAN ASSOCIATION OF                                  )
RETIRED PERSONS, INC., *et al.*,                         )
                                                         )
    *Defendants.*                                     )
                                                         )

## **MEMORANDUM OPINION**

On April 17, 2020, this Court denied defendant American Association of Retired Persons, Inc.'s ("AARP's") Motion for Summary Judgment in its entirety, allowing both the discrimination claim and the retaliation claim to proceed. The Court also granted in part and denied in part defendant Aquent, LLC's ("Aquent's") Motion for Summary Judgment, dismissing the retaliation claim but allowing the discrimination claim to proceed. The Court assumes familiarity with that Memorandum Opinion (ECF No. 42) and the accompanying Order (ECF No. 43). AARP and Aquent have both filed motions for reconsideration (ECF Nos. 48 & 49). Upon consideration of those motions, plaintiff Lisa Singh's opposition (ECF No. 53), and defendants' replies (ECF Nos. 56 & 57), the Court will **DENY** both motions.

## **LEGAL STANDARD**

Because a denial of summary judgment is not a final judgment, a motion to reconsider that denial is evaluated under Federal Rule of Civil Procedure ("Rule") 54(b). *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time

1

before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b) relief is available "as justice requires." *Cobell*, 355 F. Supp. 2d at 539. Relevant considerations "include whether the Court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008). The Court also has discretion to "grant a motion for reconsideration if there are other good reasons for doing so." *Cobell*, 355 F. Supp. 2d at 540.

## ANALYSIS

For the reasons set forth below, the Court will deny both AARP's and Aquent's requests for reconsideration, as neither motion meets the Rule 54(b) standard.

## I. AARP'S MOTION FOR RECONSIDERATION

AARP's Motion for Reconsideration fails to raise any argument that would warrant reversing course and granting its request for summary judgment. As Ms. Singh aptly points out, "AARP has merely regurgitated the same wholly unsuccessful arguments asserted in its Motion for Summary Judgment." ECF No. 53 at 7. AARP accuses the Court of "improperly questioning the credibility" of potential defense witnesses. ECF No. 49-1 at 12. On the contrary, the Court merely noted the existence of potential credibility disputes, correctly noting that a jury must make all determinations of witness credibility. As the Court reiterated numerous times throughout its Memorandum Opinion, "the Court is not supposed to weigh the evidence—rather, the Court must determine whether there is contradictory evidence to be weighed at trial." ECF

2

No. 42 at 4. Additionally, much of AARP's motion is dedicated to attempting to refute each piece of evidence that could potentially weigh in Ms. Singh's favor. This approach fails to recognize that discrimination and retaliation claims are rarely about one piece of "smoking gun" evidence. Rather, these types of claims involve analyzing the evidence as a whole, with each individual piece of evidence merely constituting "one brick in the wall." Therefore, even though a single piece of evidence standing alone may be insufficient to prove Ms. Singh's claims, it is the evidence in its totality that a jury must consider. It is also important to remember that at the summary judgment stage, the Court has to draw all inferences in Ms. Singh's favor. A jury, however, will not be operating under this restriction.

Furthermore, AARP takes issue with this Court's determination that Ms. Singh's retaliation claim is still viable despite the lapse in time between the protected activity and the adverse action. The Court already explained in its April 17, 2020 Memorandum Opinion why this is a unique situation wherein the amount of time that passed does not bar her claim, and it will not repeat that reasoning here. While AARP is certainly welcome to argue to the jury that the lapse in time makes a retaliatory animus less likely, the lapse in time does not bar Ms. Singh's claim as a matter of law in this particular instance.[1] Moreover, AARP's arguments about Ms. Boltax rather than Ms. Bettencourt being the sole decisionmaker are unpersuasive. For the reasons already stated in the April 17, 2020 Memorandum Opinion, a jury will ultimately need to decide that question. Essentially, AARP's Motion for Reconsideration is nothing but an attempt to relitigate issues that the Court already clearly decided in its April 17, 2020 Memorandum

---

[1] AARP incorrectly claims that the Court determined that "temporal proximity, or the lack thereof, is *irrelevant* to Ms. Singh's retaliation claim." ECF No. 49-1 at 18 (emphasis added). The Court made no such determination. As noted in both the April 17, 2020 Memorandum Opinion and in this Memorandum Opinion, the lapse in time is certainly relevant evidence that AARP is welcome to present to the jury; however, because it does not conclusively bar Ms. Singh's claim as a matter of law, the Court cannot grant summary judgment for AARP.

Opinion. The Court finds that AARP is not entitled to reconsideration, as justice does not require reconsideration. Ms. Singh's discrimination and retaliation claims against AARP may thus proceed to a jury.

## II. AQUENT'S MOTION FOR RECONSIDERATION

Although the Court does not believe that Aquent is entitled to reconsideration, the Court does agree that a more detailed explanation of why Ms. Singh's discrimination claim may proceed to trial would be useful.[2] Aquent's primary argument is essentially that it lacked the ultimate authority to prevent AARP from discriminating against Ms. Singh, and thus as a matter of law it cannot be held liable for AARP's discrimination. Although the D.C. Circuit does not appear to have directly addressed joint employer liability in this context, the Fifth Circuit has held that a staffing agency is only liable for the discriminatory conduct of its joint-employer client if it (1) participates in the discrimination; or (2) knows or should have known of the client's discrimination but fails to take corrective measures within its control. *Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 189-90 (5th Cir. 2016). This is the standard that the Court used when ruling on Aquent's initial summary judgment motion, and Aquent agrees that this is the correct standard. There is no evidence that Aquent participated in the discrimination, so Ms. Singh must rely on the second prong of *Nicholson* to prove her discrimination claim against Aquent. Aquent regurgitates the same arguments from its initial summary judgment motion in arguing that Aquent had no reason to know of AARP's

---

[2] For the purposes of this Section of the Memorandum Opinion, the Court must assume that a jury will first find that AARP acted discriminatorily when it terminated Ms. Singh. If a jury does not find that AARP acted discriminatorily, then Aquent cannot be held liable for discrimination. Nothing in this Section should be taken as an indication that the Court believes a jury is certain to find AARP liable for discrimination; as detailed in the April 17, 2020 Memorandum Opinion, there are many factual issues that a jury still must resolve with respect to that claim.

4

discrimination. The Court already explained why a jury could find that Aquent should have known of AARP's discrimination in its initial Memorandum Opinion and will not repeat that explanation here.

The remaining question under *Nicholson's* second prong is whether "corrective measures within its control" means that Aquent must have had ultimate authority over AARP's decision to terminate Ms. Singh, or merely that Aquent must have taken all reasonable steps to try to correct AARP's decision to terminate Ms. Singh even if it could not ultimately stop the discrimination. The Court believes the latter is the proper question. In trying to argue that the former is the proper question, Aquent suggests that the Court improperly ignored *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33 (D.D.C. 1997). This argument is insufficient for four main reasons. First, the Court did not ignore *Caldwell*—in fact, it expressly cited *Caldwell* in its initial Memorandum Opinion. ECF No. 42 at 16-17. Second, *Caldwell* is not binding authority. Although Aquent characterizes *Caldwell* as "long-standing" and "oft-cited," ECF No. 48-2 at 5, it has never been cited or addressed by the D.C. Circuit in the twenty-three years since it was issued. Aquent also fails to acknowledge that although *Caldwell* has been cited by the D.C. District Court in approximately thirty-seven different cases (not including this one), it does not appear that the D.C. District Court has ever cited the portion of *Caldwell* analyzing whether a joint employer took all corrective measures within its control. Indeed, *Caldwell* is usually only cited when courts must determine whether the plaintiffs exhausted their administrative remedies or whether the plaintiffs can establish a hostile work environment.[3] Neither of these issues is present here.

---

[3] Although a few D.C. District Court cases do reference *Caldwell* in connection with the two-pronged test for joint employer liability, they do not address the detailed issues present here. *See, e.g., Nytes v. Trustify, Inc.*, 297 F. Supp. 3d 191, 207 (citing *Caldwell* in finding that the plaintiff could survive a motion to dismiss by alleging that the joint employer knew of the discriminatory conduct, even if the plaintiff did not allege that he directly told the joint employer about his request for an accommodation); *Riggsbee v. Diversity Servs.*, 637 F. Supp. 2d 39, 45 n.1 (D.D.C. 2009) (citing *Caldwell* in a footnote solely to establish the general rule for joint employer liability).

Third, *Caldwell* is factually distinct from this case. *Caldwell* specifically held that no reasonable jury could find that the joint employer knew or should have known about any discriminatory conduct, whereas the Court already explained in its original Memorandum Opinion why a reasonable jury could potentially find that Aquent should have known that Ms. Singh's termination was based on discrimination. Although the Court in *Caldwell* also found that the joint employer could not have prevented the discrimination, that finding was likely influenced by the fact that the joint employer had no reason to know of the discrimination. Additionally, the joint employer in *Caldwell* made a reasonable inquiry into whether the plaintiffs' terminations were lawful and reasonably concluded that they were. In this case, however, Aquent's inquiry consisted of sending an email asking for more information about Ms. Singh's termination—although a jury may find that this was sufficient, a jury could also find that further investigation was warranted under the circumstances. Aquent further argues that like in *Caldwell*, it satisfied its responsibility to take corrective measures by offering Ms. Singh different employment. While Aquent may certainly produce evidence of this relevant fact at trial, a jury must determine whether that was sufficient or whether other corrective measures would have been reasonable under the circumstances.[4]

Fourth, even if *Caldwell* were perfectly analogous to this case, there is good reason for departing from its holding with respect to joint employer liability. Most employment agencies operate like Aquent in that the client (here, AARP) has ultimate control over whether to

---

[4] In *Waltman v. International Paper Co.*, the Fifth Circuit held that taking some corrective action does not automatically absolve a defendant of liability for discrimination if additional corrective actions would have been reasonable under the circumstances. 875 F.2d 468, 479 (5th Cir. 1989). The D.C. District Court similarly held that the sufficiency of a defendant's corrective measures is a fact-specific question. *Rochon v. Attorney Gen. of U.S.*, 734 F. Supp. 543, 547 (D.D.C. 1990). Although these holdings were made in the context of employers being held vicariously liable for their employees' discriminatory conduct (and thus they are inapplicable to the question of whether a joint employer must have ultimate control over the discriminatory conduct to be held liable), they still suggest that Aquent is not automatically absolved of liability simply by taking some corrective measures—rather, a question of fact remains regarding whether those corrective measures were sufficient.

terminate an employee that the agency procured—put another way, it is common for people like Ms. Singh to work for the client on an at-will basis. If the Court were to accept Aquent's argument that it cannot be held liable because it could not prevent AARP from terminating Ms. Singh for discriminatory reasons, the Court would essentially be shielding Aquent (and all other employment agencies who operate in this fashion) from liability under the second prong of *Nicholson*. Indeed, even if Aquent admitted to having direct knowledge of AARP's discrimination, it would still be able to throw its hands up and say, "No corrective measures that we take can cure AARP's discrimination because Ms. Singh's contract is ultimately under AARP's control, and therefore we have no obligation to take any corrective measures at all." Therefore, in order to ensure that the second *Nicholson* prong is not rendered impotent, the Court must find that the second prong does not require that a corrective measure have the ability to cure the discriminatory act in order to constitute a corrective measure. Rather, a jury must look at what steps Aquent took and determine whether it reasonably should have done more as part of a good-faith effort to cure the discrimination, even if the ultimate decision to terminate Ms. Singh was still in AARP's hands. Essentially, the availability and reasonableness of corrective measures is a question of fact, not a question of law. Although a jury may find that the steps Aquent took in this case were sufficient, as explained in the Court's initial Memorandum Opinion, a jury may also find that Aquent should have done more.

The Court's reasoning is also confirmed by the relevant legal standard for determining whether a defendant was a joint employer who may be liable for discriminatory acts committed by another employer. As the D.C. Circuit has clarified, a defendant need not have *direct* control over the terms and conditions of the plaintiff's employment in order to be a joint employer—*indirect* control over the terms and conditions of the plaintiff's employment will suffice. *See*

*Browning-Ferris Indus. of Cal. v. NLRB*, 911 F.3d 1195, 1201 (D.C. Cir. 2018) (citing *NLRB v. Browning-Ferris Indus., Inc.*, 691 F.2d 1117 (3d Cir. 1982)). Whether the employer retained the power to fire the plaintiff is only one factor to consider under the *Browning-Ferris* test for joint employers. *See Nytes v. Trustify, Inc.*, 297 F. Supp. 3d 191, 204 (D.D.C. 2018). This suggests that even if an employment contract gives only one employer the authority to terminate the plaintiff, if the joint employer still retains indirect control over other terms and conditions of employment, the joint employer is potentially liable if that termination was discriminatory.

Of course, the second prong of *Nicholson* is irrelevant if Ms. Singh does not first establish that Aquent was in fact a joint employer. The Court is somewhat skeptical about whether Ms. Singh can meet this standard based on the evidence presented at the summary judgment stage; however, the Court cannot grant summary judgment for Aquent on this basis because Aquent did not argue the joint employer issue in its summary judgment motion or in its motion to reconsider. Although Aquent "d[id] not concede that it should be considered a joint employer with AARP," ECF No. 27-1 at 22, it failed to provide any additional argument about why it should not be considered a joint employer. Instead, Aquent stated that "resolution of the joint employment relationship is not necessary to dispose of Plaintiff's Complaint in this case." *Id.* By failing to address this issue, Aquent precluded itself from obtaining summary judgment based on a finding that it is not a joint employer. It is Aquent's burden to prove that no reasonable jury could find in Ms. Singh's favor on this issue, yet Aquent made no effort whatsoever to address that issue. "[N]ot conced[ing]" that it is a joint employer, *id.*, is insufficient to obtain summary judgment. Therefore, it will be up to a jury to decide whether Aquent is a joint employer with AARP, and Aquent's request for reconsideration will be denied.

8

## CONCLUSION

Based on the foregoing, the Court will **DENY** defendant AARP's Motion for Reconsideration (ECF No. 49) and **DENY** defendant Aquent's Motion for Reconsideration (ECF No. 48).

A separate Order accompanies this Memorandum Opinion.

Date: July 17, 2020

*[Signature]*
Royce C. Lamberth
United States District Court Judge